Nicholsok, C. J.,
delivered the opinion of the Court.
Complainant filed her bill for divorce and alimony, against defendant, on the 7th of November, 1864. Defendant being a non-resident, publication was made, and upon his failure to appear and defend, at the June Term, 1865, of the Chancery Court at Dandridge, judgment _pro eonfesso was taken, and the cause set for hearing. The cause was heard at the same term, when a decree was made, dissolving the bonds of matrimony. It appearing to the Court that complainant prayed for alimony, and that to secure this, complainant had procured a tract of land, of about 230 acres, belonging to defendant, to be attached; and the Chancellor, being of opinion that she was entitled to alimony, ordered the Clerk and Master to report what amount would be proper as alimony,, and, also, what would be a reasonable compensation to her solicitor.
The Clerk and Master reported that two thousand dollars would be a reasonable allowance as alimony,, and that two hundred dollars would be reasonable compen *560 sation to her solicitor. This report was confirmed, and the land attached was decreed to be sold. • The following is the decree: “ That the tract of land mentioned in the pleadings, so attached, be sold in satisfaction of the aforesaid sum of money, and the costs of the suit; and that the Clerk and Master, after giving thirty days’ notice, will proceed to sell said land to the highest bidder, on a credit of six months, taking bond and security, and retaining a lien until the purchase money is paid, with the exception of the sum of four hundred dollars, which the Clerk and Master shall require to be paid cash in hand on the day of sale; and out of the proceeds of sale, the Clerk and Master shall first pay the costs of this suit, the solicitor’s fee, and the sum of two thousand dollars to the complainant, as her alimony, &c.; and at the special instance and request of complainant, the said land shall be sold without the equity of redemption.”
The land was sold in August, 1865, when it was bid off by a purchaser at two thousand five hundred dollars, of which four hundred dollars was paid in cash, and a note given for the residue, payable at six months. At the December Term, 1865, the sale was confirmed, ,and the title divested and vested.
On the 30th of August, 1867, defendant petitioned one of the Supreme Judges for a writ of error, which was granted.
It is now moved to dismiss the writ of error, on two grounds: first, because the five days’ notice of the application for writ of error was not given; and second, because by section 3158 of the Code, divorce cases can be revised only by appeal.
*561 The answer to the first reason is, that complainant has waived the necessity for notice by appearing — thus answering the object of notice.
The answer to the second reason is, that the bill is not only a divorce bill, but also a bill for alimony. Whilst it is true that errors in divorce eases can only be revised upon appeal, it does not follow that errors in a bill for alimony, as well as divorce, may not be revised by writ of error. The reasons for excepting divorce cases from the general provision allowing writs of error, are special, and have no application to decrees for alimony. Nor is there any necessary connection between divorce and alimony; a divorce may be granted without alimony, and alimony may be granted when no divorce is decreed. Code, 2468. Looking to the intention of the Legislature as our guide, we are satisfied that it was not intended to prohibit writs of error in cases of alimony. Whilst, therefore, any error in this case, as to the divorce, cannot be revised by this court, if there are errors in the decree, as to alimony, they are subject to revision by writ of error. In this conclusion, we are not in conflict with with the cases of Parmenter v. Parmenter, 3 Head, 225, and Owens v. Sims, 3 Cold., 544.
An examination of the record discloses much irregularity and disregard of the rules of Chancery proceedings, in the ascertainment of a reasonable amount to be allowed for alimony, and as compensation to complainant’s solicitor; but as we do not see that either allowance is unreasonable, or that injustice was done to defendant, we refrain from commenting upon these irregularities. The objection to the decree mainly relied on *562 by defendant’s counsel, is, that the Chancellor decreed the land to be sold for four hundred dollars in cash, and the residue on á credit of six months; and, at the special instance and- request of the complainant, ordered the sale to take place without the equity of redemption. We are aware of no reported case in which the question now raised, has been determined. We must be governed, then, by a fair construction of those provisions of the Code, which secure to the debtor or owner of the land sold, the right of re-purchase or redemption, and of those which authorize the Court to decree sales free from this right of re-purchase or redemption.
The general law is, that all real estate sold under execution, or under a • decree, judgment or order of any Court of Chancery, whether founded on a foreclosure of a mortgage, or deed of trust, or otherwise, shall be redeemable at any time within two years after such sale. Code, 2124. By this general law the right of redemption is secured, whether the sale be for cash or on a credit. But this right of redemption is subject to this exception: When, upon application of a complainant, the Court orders that the property be sold on a credit of not less than six months nor more than two years, upon confirmation thereof by the Court, no right of redemption or re-purchase shall exist in the debtor or his creditor, but the title of the purchaser shall be absolute. In such case no right of redemption or of. re-purchase exists. Code, 2124 and 4489. By this exception, the complainant may, with the assent of the Court, deprive the debtor of the benefit of redemption secured to him by the general law. In the case of Burrow v. Henson, *563 2 Sneed, 658, this Court said, that to obtain the benefit of the exception and destroy the right of redemption, the sale must be brought strictly .within its provisions. Two things, therefore, must appear distinctly in the decree to make it operative in destroying the right of redemption. First, it must appear that complainant' made the application for a sale on credit. It is not sufficient that the Chancellor, of his own motion, ordered the sale on a credit. It must appear that he was moved to do so upon the application of complainant. Such was the holding of the Court in Burrow v. Henson, just referred to. In that case there was no order that the land be sold free from redemption. In the case before us, it is not stated-that the Chancellor, upon the application of complainant, ordered the land to be sold on a credit of six months; but at the conclusion of the decree it is stated, that at the special instance and request of the complainant the said land shall be sold without the equity of redemption. This, we think, was a substantial compliance with the requisites of the exception, and that in this respect the decree was not erroneous.
The decree directs the Clerk and Master to sell the land on a credit of six months, except as to four hundred dollars, which he is directed to require in cash. Was the order to require four hundred dollars in cash such a compliance with the law as to defeat the debtor of his right to redeem? By the letter of the law, the sale of the land must be on a credit, otherwise the right of redemption survives. It is said that this court, in an unreported case, held that the requirement of $100 in cash, to pay costs, was not such a sum as *564 would open the right of redemption. Without having seen the case, we presume there was enough in the record to satisfy the Court, that the sale was substantially in compliance with the law, and that the debtor had no reasonable cause of complaint.
We are not prepared to hold, that, where both parties have been represented in the Court below, and when it may be fairly inferred, either that the decree was assented to by the debtor’s counsel, or that the amount of cash sale did not probably diminish the aggregate amount of the bidding, such sale is not substantially in conformity to the requisitions of the law. When the Chancellor can see, either from his knowledge of the facts contained in the record, or by the admission of counsel representing the owner of the land to be sold, that the requiring of an amount in cash sufficient to cover costs and counsel fees, will not interfere with the obtaining of a full and fair price for the land, we should consider it sticking in the bark to hold such sale was not, in substance, a sale on credit. But the record here, presents a very dif-serent state of facts. The land is shown, by one witness, to have been worth $3,000, and by another, $4,000; the Clerk and Master’s estimate was, that it was worth $3,500. Upon a credit of six months, $400 being required in cash, it brought $2,500. The defendant was a non-resident, and not represented by counsel. Under such circumstances, we are so far from being satisfied that a full and fair price was obtained, we are strongly impressed with the belief that the land was sold at ■ a' sacrifice, and we can not see, but that the *565 amount of the cash required, may have contributed to the sacrifice. Besides, we can see no apparent necessity for requiring such an amount in cash, nor for limiting the credit to so short a time as six months. Both the 'letter and the spirit of the law were violated.
So much of the decree, therefore, as directed the land to be sold without the equity of redemption, was erroneous, and the right to redeem or to re-purchase, was not thereby cut off and destroyed. To this extent the decree is reversed, and in all other respects it is affirmed.
Our attention has been called to the Code, 3186, which provides that the right, title and interest of any such purchaser, acquired under the judgment or decree, before the writ of error and supersedeas was granted, shall not be disturbed or affected by the reversal of such decree. Whether our reversal of the decree shall in any way, disturb or affect the right, title and interest of the purchaser of the land, is not a question for our adjudication, on this record. The defendant has a right to have the errors in a decree revised, but whether their revisad will avail him any thing, is in no way involved in our inquiries.
The decree will be reversed, as herein indicated, but as our action here renders no further proceedings necessary in the Court below, the cause will not bo remanded. The costs of this writ of error will be paid by the complainant.

This case was cited in the case of John McCollum v. Rhoda McCollum, Nashville, January 14, 1871. The defendant, Rhoda McCollum, had filed her bill against her husband, the complainant, as a non-resident, on the *566 ground, amongst others, of abandonment for more than two years, and alleging a removal of himself and a large portion of his property from the State. On this bill she had obtained a decree for divorce and alimony, by which all the property left by the defendant in Tennessee was vested in the wife. The present bill was filed by John McCollum within three years from that decree, to review and vacate it so far as it related to the alimony. The lands decreed to the wife were held under a deed executed during coverture by five tenants in common with the wife, she having one-sixth in her own right. The deed was made to the husband and wife jointly.
It appears in the record that when complainant abandoned his wife, he took with him a considerable amount in money, which fact was stated by the Chief Justice in connection with the third resolution in the opinion.
Pending the bill of review, the Court below made several orders, requiring the defendant, Rhoda, to pay specific sums to the complainant by a certain day.
The decree below was, that the “ decree, so far as it divests the title of John McCollum, in the land, negro, and other property of him, and vests the same in Rhoda McCollum, be set aside; and said cause, as to the proper-amount of alimony, is now open for a re-hearing-.” A reference was made to the Clerk to ascertain the proper amount of alimony, on which was a report and final decree. This decree gave to the wife the interest which she had held anterior to the joint deed to the husband and wife, and one-half of the remaining part of the land. To the husband it gave also half of the remaining part of the land, and one-half of the personal property left by the husband with the wife when he abandoned her. From this decree the defendant, Rhoda, appealed, and pending the appeal complainant died, and this suit was revived, at the instance of his administrator, in the name of the administrator.
J. W. Newman and J. P. Dismukes, for complainant. Wm. P. Ker-cheval, for defendant.
Nicholson, C. J., delivered the opinion of the Court.
1.The death of complainant does not have the effect of abating either the appeal or the suit. In this respect an appeal from a decree of divorce differs from a decree for alimony. McBee v. McBee, 1 Heiskell, 558. The revivor, therefore, in the name of complainant’s administrator, was proper.
2. - By the death of comifiainant, the title to the 200 acres of land survived to defendant. The decree, therefore, giving him one-half the land ceases to be operative, and the title to the entire tract is vested in defendant.
3. It was not reasonable to 'allow complainant one-half of the value of the personal goods and chattels left with his wife when he abandoned her. The proof shows that his object in leaving her was to reduce her to hardship and trouble. He left with her no more than was necessary to keep her from want. Besides, by interlocutory decrees, she was required to make cash provision, for several years, for his support. In regard to the half of the value of the personal property, this decree is reversed.
Defendant will pay the costs of this Court, and of the Court below.